UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARROWL DAVIS,

             Petitioner,

   -vs-

H. GRAHAM, Superintendent
Auburn Correctional Facility

             Respondent.

_____

**DECISION AND ORDER**

**No. 06-CV-06569T**

## I.   Introduction

*Pro se* petitioner Sharrowl Davis ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered February 28, 2001, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of two counts of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[2], [3]), and two counts of Robbery in the First Degree (Penal Law § 160.15[4]).

For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

Petitioner's conviction arises out of an incident that occurred on July 17, 2000 in Chili, New York, wherein Petitioner robbed, shot, and killed Phillip Skellen ("Skellen" or "the victim") and robbed Robert Lee ("Lee").

On the day of the incident, Petitioner spoke with his

girlfriend, seventeen-year-old Simone Miller ("Miller"), by phone and arranged to travel from Rochester to her apartment in Chili, New York. Trial Transcript [T.T.] 538-544, 696-98.

While at Miller's apartment, Miller, Petitioner, and Miller's friend, fifteen year-old Ashley Palmer ("Palmer"), socialized and consumed alcohol. At some point, Petitioner asked Miller where he could procure some marijuana. Miller called Lee, an acquaintance who lived a block away from her. At approximately 7:00 p.m., Lee, along with his friend Skellen, arrived at Miller's apartment with a plastic bag full of marijuana. Lee weighed and sold a quarter ounce of the marijuana to Petitioner for $25. T.T. 544-547, 629-32, 698-701.

Shortly thereafter, Petitioner asked if Skellen would drive him home if Petitioner paid for the gas. Skellen agreed, and the price of the gas was set at $3. Lee got into the front passenger seat of Skellen's Buick, placing the remaining stash of marijuana underneath the seat. Miller, Palmer, and Petitioner got into the backseat. Along the way, they stopped at a convenience store on Chili Avenue where Lee purchased two cigarettes, which they hollowed out and filled with marijuana. They then all shared the marijuana "blunt." T.T. 548-553, 566, 633-637, 701-703.

Skillen continued driving down Chili Avenue until it intersected with Main Street. At that point, Petitioner directed Skellen to turn left onto Brown Street and then make a left turn

onto Eddy Street, where he then directed Skellen to stop at the second house from the corner, behind a parked van. Petitioner got out of the vehicle and indicated that he would be right back with the gas money. T.T. 553-555, 637-638, 703-04.

Petitioner went around the side of an abandoned house and returned several minutes later with a rifle, which he pointed through the front passenger window at Skellen. Lee heard what sounded like a gun being cocked as Petitioner "pulled something back on the rifle." Petitioner ordered Skellen to turn off the ignition and to hand over his valuables. When he did not do so, Petitioner shot Skellen in the chest. T.T. 557-558, 639-642, 682-683, 705-606. Skellen, after having been shot, yelled reactively and then turned off the ignition. Petitioner then reached into the vehicle and grabbed Lee's necklace and Skellen's necklace, and took the marijuana from underneath the front seat of the vehicle. Skellen then gave Petitioner his wallet. Petitioner ordered Lee out of the car where he searched through his pockets. Before Petitioner fled into the hedges behind the abandoned house, he warned Miller and Palmer that he would kill them if they said anything. T.T. 558-560, 564, 641, 643, 707-709.

After Petitioner left, Lee ran to a pharmacy and called 911. Palmer and Miller both fled the scene. T.T. 569-750, 645-646, 709-711.

Police Officer David Briganti, who was stationed nearby,

responded to the call, and Lee brought him to the car where Skellen was slumped motionless in the driver's seat. An investigator for the Medical Examiner's Office arrived a while later, pronounced Skellen dead, and noted a gunshot wound to the chest from the right side. T.T. 777-778. The autopsy confirmed that the gunshot wound was the cause of death. Petitioner's fingerprints were recovered from the trunk and the inside handle on the left passenger side of the vehicle. T.T. 766-769. Petitioner was arrested about six weeks later. T.T. 932-933.

A jury trial was conducted from January 16, 2001 until January 22, 2001, resulting in Petitioner being found guilty of two counts of murder in the second degree and two counts of robbery in the first degree. On February 27, 2001, he was sentenced to twenty years to life on each of the murder charges, seven years for the robbery charge related to Skellen, and five years for the robbery charge related to Lee. The sentences were directed to run concurrently. Sentencing Minutes [S.M.] 27.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department on the following grounds: (1) prosecutorial misconduct; (2) exclusion from a material stage of the proceedings; (3) insufficiency of the evidence related to the depraved indifference murder conviction; and (4) ineffective assistance of trial counsel on various grounds. The Appellate Division, Fourth Department unanimously affirmed the judgment of

conviction on July 3, 2003.  People v. Davis, 307 A.D.2d 722 (4th Dep't 2003).  Leave to appeal to the New York Court of Appeals was denied on September 18, 2003.  People v. Davis, 100 N.Y.2d 619 (2003).

On August 3, 2004, Petitioner filed a motion with the Supreme Court, Monroe County to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the following two grounds: (1) juror misconduct;  and (2) ineffective assistance of trial counsel for failure to notify the trial court of the juror misconduct.  The Supreme Court, Monroe County denied Petitioner's motion on state procedural grounds on April 15, 2005. See Decision & Order of the Supreme Court, Monroe County, Indictment No. 2000-0449, dated April 15, 2005.  Petitioner appealed the denial, which was denied by the Appellate Division, Fourth Department on January 4, 2006.  See Decision of the Appellate Division, Fourth Department, Indictment No. 2000-0449, dated January 4, 2006.

On or about May 3, 2006, Petitioner filed a second CPL § 440.10 motion, which was denied by the Supreme Court, Monroe County, on state procedural grounds.  See Order of the Supreme Court, Monroe County, Indictment No. 2000-0449, dated October 6, 2006.  Petitioner did not appeal the denial.

On or about October 27, 2006, Petitioner filed the instant habeas corpus petition, wherein he seeks relief on the following

grounds: (1) insufficiency of the evidence related to the murder charges; (2) ineffective assistance of trial counsel for failing to properly advise Petitioner of his right to testify at trial; (3) juror misconduct/ineffective assistance of trial counsel for failing to notify the trial court of juror misconduct; (4) exclusion from material stages of trial; (5) prosecutorial misconduct for improper comments made on summation.

On or about September 4, 2007, Petitioner filed a motion with this Court to stay the habeas petition so that he could return to state court to exhaust additional claims, including an ineffective assistance of appellate counsel claim. See Petitioner's Motion to Stay the Habeas Petition (Docket #16). Before the Court ruled on the motion, Petitioner filed an application for coram nobis with the Appellate Division, Fourth Department, which was summarily denied on October 3, 2008. See Decision of the Appellate Division, Fourth Department, Indictment No. 449/00, dated October 3, 2008. By this Decision and Order, Petitioner's Motion to Stay is denied as moot, and the ineffective assistance of appellate counsel claim is addressed herein.

On or about March 28, 2008, Petitioner filed a third CPL § 440.10 motion, which was denied by the Supreme Court, Monroe County, on state procedural grounds. See Order of the Supreme Court, Monroe County, Indictment No. 2000-0449, dated May 22, 2008. Petitioner did not appeal the denial.

**III. General Principles Applicable to Habeas Review**

    **A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable

application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom. Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340

(2003).

## B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v.

Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV.   Petitioner's Claims

### 1.   JUROR MISCONDUCT/INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO ALERT TRIAL COURT OF JUROR MISCONDUCT

Petitioner contends that he received an unfair trial due to improper contact between a juror and the victim's family.  In a related claim, he contends that he received ineffective assistance of counsel because counsel failed to report to the trial court the alleged misconduct.  Petition [Pet.], Ground Three.  Petitioner raised these claims in his first CPL § 440.10 motion.  The trial court denied the motion without a hearing, pursuant to CPL § 440.10(3)(a), finding that Petitioner could have, with due

-10-

diligence and before sentencing, placed all essential facts on the record.  See Decision and Order of the Supreme Court, Monroe County, Indictment No. 2000-0449, dated April 14, 2005.  The trial court's reliance on CPL § 440.10(3)(a) is an adequate and independent state bar that precludes federal habeas review.  See Coleman, 501 U.S. at 729-30; Harris v. Reed, 489 U.S. 255, 260-61 (1989).

This court is generally procedurally barred from considering a ruling that "fairly appear[s] to rest primarily on state procedural law." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).  To bar federal habeas review, however, the state court's decision must rest not only on an independent procedural bar under state law, but also on one that is "adequate to support the judgment." Jimenez, 458 F.3d at 138.

A state procedural bar is "adequate" if it "is firmly established and regularly followed by the state in question" in the specific circumstances presented in the instant case.  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation omitted).  The "guideposts" for analyzing the issue of adequacy, articulated in the context of a procedural default occurring at trial, are:  (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the

specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. <u>See</u> <u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted).

Here, the <u>Cotto</u> factors support the conclusion that the trial court's decision was adequate to support the judgment. The trial court clearly relied on an independent procedural bar under state law in dismissing Petitioner's juror misconduct and related ineffective assistance of counsel claim, and New York state courts regularly invoke CPL § 440.10(3)(a) in holding that claims are procedurally barred because they were not raised at or before trial. <u>See, e.g.</u>, <u>People v. Hall</u>, 28 A.D.3d 678 (2d Dep't 2006); <u>People v. Livingston</u>, 836 N.Y.S.2d 494 (N.Y. Sup. Ct. 2007); <u>People v. Forney</u>, 862 N.Y.S.2d 810, [slip op.] at *4-5 (N.Y. Sup. Ct. 2005). Petitioner did not substantially comply with this rule because he failed to raise the issue of juror misconduct and the related ineffective assistance claim at trial and on appeal. Finally, compliance with the procedural bar serves the legitimate government interest of not permitting the circumvention of direct appeals. <u>See</u> <u>People v. Degondea</u>, 3 A.D.3d 148, 156-57 (1st Dep't 2003) (denying motion under section 440.10(3)(a) to "give effect to the legislative intent that the CPL 440.10 motion not be 'employed as a substitute for direct appeal.'") (quoting <u>People v. Cooks</u>, 67

N.Y.2d 100, 103 (1986))); People v. Donovon, 107 A.D.2d 433, 443 (2d Dep't 1985) ("the procedure [set forth in section 440.10(3)(a)] cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal").

Moreover, federal courts in this Circuit have routinely upheld the application of CPL § 440.10(3)(a) as an adequate and independent state ground that prevents a federal court from reviewing the merits of the claim. See, e.g., Farr v. Greiner, 01 CR 6921 (NG) (MDG), 2007 U.S. Dist. LEXIS 26401 (E.D.N.Y. Apr. 10, 2007); Collins v. Superintendent Conway, 04 Civ. 4672 (RPP), 2006 U.S. Dist. LEXIS 23478 (S.D.N.Y. Apr. 26, 2006). Accordingly, the procedural default relied upon by the state court in denying Petitioner's motion pursuant to § 440.10(3)(a) bars any federal habeas review of Petitioner's claims by this Court, unless he "can demonstrate cause for the default . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner has made no showing of cause and prejudice in the habeas petition, nor has he attempted to demonstrate that this Court's failure to review the claim will result in a miscarriage of justice.

The claim is barred from habeas review and is therefore dismissed.

## 2. INSUFFICIENCY OF THE EVIDENCE AND PROSECUTORIAL MISCONDUCT CLAIMS

Petitioner contends that the evidence was insufficient to

-13-

support the felony murder and depraved indifference murder convictions. In an unrelated claim, Petitioner also contends that the prosecutor engaged in misconduct on summation. Pet., Grounds One and Five. Petitioner raised both of these claims on direct appeal, and they were rejected by the Appellate Division on state procedural grounds pursuant to CPL § 470.05(2) for failure to preserve the issues. The Appellate Division's reliance on New York's contemporaneous objection rule is an adequate and independent state bar that precludes federal habeas review. See Coleman, 501 U.S. at 729-30; Harris v. Reed, 489 U.S. at 260-61.

As discussed above, a habeas court may not review a federal issue when the last state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. 722 at 729. It is well-settled law that New York's contemporaneous objection rule (codified at CPL § 470.05(2)) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). Here, the Appellate Division relied on CPL § 470.05(2) to find that Petitioner failed to properly preserve his insufficiency of the evidence and prosecutorial misconduct claims. These findings demonstrate that the state court's decision on these issues rested on an adequate and independent state procedural rule that bars federal habeas review of the issues by this Court. As

discussed above, Petitioner makes no showing of cause and prejudice in his habeas petition, nor has he made any demonstration that he is actually innocent such that there would be a fundamental miscarriage of justice if the Court were not to review his claim.

The claim is barred from habeas review and is therefore dismissed.

## 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR IMPROPERLY ADVISING PETITIONER TO WAIVE HIS RIGHT TO TESTIFY

Petitioner contends that he received ineffective assistance of counsel because his attorney "advised [him] to waive his right to testify without properly informing [him] of the results of such decision." Pet., Ground Two. Petitioner raised this claim on direct appeal, and the Appellate Division found that the issue was not reviewable because it "implicates strategic discussions between defendant and counsel that are dehors the record." Davis, 307 A.D.2d at 723. Subsequently, Petitioner attempted to raise this issue in a second CPL § 440.10 motion, but failed to appeal the denial of the motion. Although Petitioner may still have state court remedies available to him to exhaust the claim, it is plainly meritless,[1] and, as such, this Court will dismiss the claim

---

[1]    The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y.

notwithstanding Petitioner's failure to fully exhaust it in the state courts. <u>See</u> 28 U.S.C. § 2254(b)(2).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690. Here, petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of <u>Strickland</u>,

---

July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

and that, but for the deficiency, the result of his trial would likely have been different.

As the Appellate Division found, Petitioner's allegation that he was ill-advised by his attorney to waive his right to testify involves matters outside of the record, which prevents this Court from determining the propriety of counsel's advice. Nonetheless, Petitioner cannot meet the prejudice prong of <u>Strickland</u> by showing that even if he had testified, the result of the trial would likely have been different. Because Petitioner cannot meet both prongs of <u>Strickland</u>, his claim fails. <u>See</u> <u>Strickland</u>, 466 U.S. at 697.

In Petitioner's pro se supplemental state appellate brief, which he attached to his habeas petition, he argues that the shooting death of Skellen was an accident insomuch as he did not know that the gun was loaded when he pointed it at Skellen. He also contends that the rifle accidentally discharged. <u>See</u> Petitioner's Pro Se Appellate Brief, Point III, Page 27. Presumably, Petitioner's position is if the jury would have heard his version of the facts (i.e., that the shooting death was an accident that occurred in the course of an otherwise peaceful drug negotiation wherein Petitioner would obtain drugs and money in exchange for the rifle), it would have acquitted him of depraved indifference murder. <u>Id.</u> The Court finds this argument unconvincing.

First, it is irrelevant whether Petitioner believed the gun

was loaded when he pointed at it Skellen or whether the gun was actually loaded but accidentally discharged. Even if a jury had heard Petitioner's testimony to this effect, a reasonable juror could still have construed Petitioner's conduct -- pointing a rifle, loaded or unloaded, into an occupied vehicle at an individual's chest area -- as "reckless" in nature, such that it created a grave risk of death. Thus, it is highly unlikely that had the jury heard Petitioner's testimony, it would have rendered a different verdict on the depraved indifference murder charge.

Second, given the strength of the People's case and that the evidence against Petitioner was overwhelming, it is unlikely that had the jury heard Petitioner's testimony it would have afforded it substantial weight. Notably, Petitioner's characterization of the incident as an "accident" is contrary to three eyewitnesses -- one of which was Petitioner's own girlfriend -- who testified to the following: that Petitioner instructed Skellen to pull over at a particular street corner; that Petitioner retrieved a rifle from behind an abandoned home; that Petitioner pointed said rifle into Skellen's vehicle toward Skellen's chest area; that Petitioner demanded and eventually took money and jewelry from Skellen and Lee; and that Petitioner shot Skellen in the chest area when Skellen did not respond to Petitioner's requests.

Accordingly, Petitioner's ineffective assistance of claim based on counsel's alleged failure to properly advise him of his

right to testify lacks merit.  The claim is dismissed.

**4.   EXCLUSION FROM MATERIAL STAGE OF TRIAL**

Petitioner argues that he was deprived of his constitutional right to be present at all material stages of his trial.  Pet., Ground Four.  In particular, he contends that he was excluded from various sidebar conferences during the impaneling of the jury "when the challenges (both for cause and peremptory) were exercised outside of [his] presence."  <u>See</u> Petitioner's Pro Se Brief on Appeal, Page 15.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.

The Appellate Division determined that:

> [Petitioner] knowingly, voluntarily, and intelligently waived his right to be present at sidebar conferences where challenges to prospective jurors were discussed and, in any event, he was present in court during voir dire and when the challenges to the jury were effectuated. Therefore, [Petitioner] was not denied his right to be present at material stages of the proceedings.

<u>Davis</u>, 307 A.D.2d at 723.

To the extent that the Appellate Division's determination of this issue is based on a factual finding that Petitioner waived his right to appear at sidebar conferences and that he was present during voir dire, such facts are presumed to be correct unless Petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Petitioner has failed to do so.

Indeed, as Petitioner correctly contends, a defendant in a

state criminal trial has a constitutional right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings. Faretta v. California, 422 U.S. 806, 819 n.15 (1975). However, a defendant's right to be present at sidebar discussions when the merits of the case or "prospective jurors' backgrounds and their ability to weigh the evidence objectively" are discussed derives from New York law. See CPL § 260.20; People v. Antommarchi, 80 N.Y.2d 247, 250 (1992). "Federal standards regarding a defendant's presence at sidebars are less stringent than New York's standards." Nichols v. Kelly, 923 F.Supp. 420, 426 (W.D.N.Y. 1996) (holding that a habeas petitioner's presence at each sidebar held during jury selection was not required by the United States Constitution) (citing Gaiter v. Lord, 917 F.Supp.145, 152 (E.D.N.Y. 1996) ("[t]he federal constitution generally does not require a defendant's presence at sidebar conferences.")). Moreover, Courts in this Circuit have noted that there is no clear Supreme Court precedent supporting a claim that absence from a sidebar conference during voir dire violates the Sixth Amendment. See e.g., Perez v. Greiner, 00 Civ. 5504, 2005 U.S. Dist. LEXIS 4019 (S.D.N.Y. Mar. 14, 2005) ("[a]lthough the pre-screening and impaneling of jurors is a material stage of trial at which a defendant has a constitutional right to be present, there is no clear Supreme Court precedent supporting a claim that absence from a sidebar conference during

voir dire violates the Sixth Amendment."). Others have declined to find that a claim such as Petitioner's -- that is rooted in a violation of state law -- is even cognizable on habeas review. <u>See</u> <u>e.g.</u>, <u>Diaz v. Herbert</u>, 317 F. Supp.2d 462, 473 (S.D.N.Y. 2004) ("[E]ven if [petitioner's] rights under <u>Antommarchi</u> were violated, it does not rise to the level of a federal constitutional violation. Therefore, any alleged violation of these rights is not cognizable on habeas review."); <u>Johnson v. McGinnis</u>, 99 Civ. 11231, 2001 U.S. Dist. LEXIS 8935 (S.D.N.Y. June 29, 2001) (habeas review precluded because right to be present at sidebar during voir dire derives from New York state statutory law).

Notwithstanding that Petitioner's claim is based on state law, it also fails on the merits. A criminal defendant's right to be present during all stages of the trial may be waived, so long as the waiver is knowing and voluntary. <u>See</u> <u>Polizzi v. United States</u>, 926 F.2d 1311, 1319 (2d Cir. 1991). The record shows that Petitioner knowingly, voluntarily and intelligently waived his right to participate in the sidebar conferences immediately prior to the commencement of voir dire.[2] Furthermore, Petitioner had

---

[2] The relevant portion of the exchange between the trial judge, Petitioner's attorney, and Petitioner is as follows:

| The Court: | Miss Cianca, have you talked to Mr. Davis about sidebar conferences? |
| Miss Cianca: | I have not Judge. If I could just have one moment. |
| The Court: | Sure. |

(Brief Pause)

ample opportunity to raise any concerns or questions about his waiver since he was present throughout voir dire. See Johnson v. McGinnis, 99 Civ. 11231 (HB), 2001 U.S. Dist. LEXIS 8935 (S.D.N.Y. June 29, 2001) (finding that defendant's presence during voir dire provided him opportunity to raise concerns about his waiver and therefore constituted knowing, voluntary, and intelligent waiver); see also United States v. Doe, 964 F.2d 157, 159 (2d Cir. 1992) (holding that defendant waived his rights to attend a conference in chambers regarding sentencing by remaining in the courtroom as the conference took place).

---

| Miss Cianca: | Yes, Judge, he would be willing to waive his right to side bars. |
|---|---|
| The Court: | Mr. Davis, has your attorney talked to you about the fact from time to time it may be convenient for the Court and the attorneys to address certain issues away from the jury and by way of a sidebar, that is at the bench here and quietly so the jury can't hear what we're doing. Do you understand you have a right to be present on each of those events? |
| Defendant: | Yes, I do. |
| The Court: | And it is your wish to be present at each of those events, or do you wish to authorize your attorney to be present without you actually being at the bench. |
| Defendant: | I wish to authorize her to be present without me at the bench. |
| The Court: | All right. You understand if you want to change your mind at any time during the trial, let your attorney know and we'll conduct those conferences so you can hear what's going on. Do you understand that, sir? |
| Defendant: | Yes, I do. |
| The Court: | Do you have any questions about that? |
| Defendant: | No, I don't. |

T.T. 17-18.

Therefore, the Court cannot find that the Appellate Division's adjudication of this claim contravened Supreme Court precedent. Further, this claim raises state law issues and is thus not cognizable by this Court on habeas review. Finally, Petitioner knowingly, voluntarily, and intelligently waived his right to be present during the sidebar conferences. Therefore, there is no basis upon which to grant habeas relief. The claim is dismissed.

5.    **INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

Petitioner contends that he was deprived his Sixth Amendment right to effective assistance of appellate counsel. Petitioner raised this claim in a coram nobis application, which was summarily denied by the Appellate Division on October 3, 2008. See Decision of the Appellate Division, Fourth Department, Indictment No. 449/00, dated October 3, 2008. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

The Strickland standard of ineffective assistance of counsel, as discussed above, applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994). Moreover, counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-753. And, of course,

counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 689-90.

Here, Petitioner faults appellate counsel for failing to raise a number of "powerful issues"[3] on direct appeal. <u>See</u> Petitioner's Coram Nobis Application, Page 17. The Court notes, at the outset, that several of these allegedly "powerful issues" were already raised in the state courts as either stand-alone claims on direct appeal (via a lengthy and fairly comprehensive pro se supplemental appellate brief) or as individual ineffective assistance of counsel claims in collateral motions, two of which were denied on state procedural grounds, but never subsequently appealed. Moreover, and somewhat tellingly, Petitioner's ineffective assistance of appellate counsel claim is conveniently interwoven with various ineffective assistance of trial counsel claims. In viewing the procedural history of this case as a whole, it appears as though Petitioner is using the coram nobis application as a means to "repackage" and relitigate claims that were justifiably disposed of in the state courts on procedural grounds and/or on the merits. To that extent, the Court finds Petitioner's ineffective assistance of appellate counsel claim rather disingenuous.

Nonetheless, the claim is meritless. The record reflects that

_____

[3]     Some of these issues include:  defects in the grand jury proceeding, denial of right to counsel during interrogation, illegal arrest, and ineffective assistance of counsel for failure to preserve the issue of prosecutorial misconduct.

appellate counsel raised one issue -- prosecutorial misconduct -- that was persuasively argued, well-researched and carefully articulated in a ten page brief, nine pages of which were dedicated to the prosecutorial misconduct argument. The Court cannot find that Petitioner received deficient performance solely because counsel raised only one issue on direct appeal. Rather, counsel is permitted to winnow out weaker arguments, and to focus on those which he/she deems the most likely to succeed on appeal. See Jones, 463 U.S. at 751-753. And, it is not the province of this Court to judge, in hindsight, strategic decisions of this nature made by appellate counsel. See United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight).

Regarding Petitioner's ineffective assistance of counsel claim for failure to preserve the prosecutorial misconduct claim, the record shows that Petitioner himself raised this issue in his pro se supplemental brief on appeal, and it was reviewed and denied on the merits.

Petitioner's remaining claims are conclusory in nature and are based on either factual inaccuracies unsupported by the record or misapplied legal principles. As a whole, Petitioner's claims amount to nothing more than a generalized expression of dissatisfaction with the outcome of his trial. Thus, this Court cannot find that appellate counsel provided deficient performance

in choosing to forego raising the above meritless issues on appeal, and raise a single, stronger one instead.  Moreover, Petitioner has made no showing that had Petitioner raised the above meritless issues -- or any others for that matter -- that the outcome of the appeal would have likely been different.  See Mayo, 13 F.3d at 533.

Accordingly, the state court's adjudication of this claim was not contrary to or an unreasonable application of settled Supreme Court law.  The claim is dismissed.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),   I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with

United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:     February 17, 2010
           Rochester, New York